25CA0834 Peo in Interest of MNG 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0834
Jefferson County District Court No. 23JV30323
Honorable Lindsay VanGlider, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.N.G., a Child,

and Concerning C.N. and A.G.,

Appellants.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Kimberly S. Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for C.N.

Patrick R. Hensen, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for A.G.

¶ 1    In this dependency and neglect action, C.N. (mother) and A.G. (father) appeal the judgment terminating their parent-child legal relationships with M.N.G. (the child).  We affirm.

## I.    Background

¶ 2    The Jefferson County Division of Children, Youth and Families (the Division) filed a petition in dependency and neglect, alleging that the child was born substance exposed and that mother had abandoned the child at the hospital.  The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for both parents.

¶ 3    The Division later moved to terminate both parents' parental rights.  However, the Division asked to continue the termination hearing after locating father in custody and confirming his parentage though genetic testing.  Four months after the continuance was granted, the juvenile court terminated mother's and father's parental rights following a contested hearing.

## II.    Mother's Contentions

¶ 4    Mother contends that the juvenile court erred by finding that she could not become fit within a reasonable time when it terminated her parental rights under section 19-3-604(1)(c), C.R.S.

1

2025. However, mother does not challenge the court's finding that she abandoned the child or its termination of her parental rights under section 19-3-604(1)(a)(I) as a result of that abandonment. When a department seeks, and the court grants, termination of parental rights under section 19-3-604(1)(a), the court is not required to consider if a parent might become fit. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 37. Because mother does not contend that the court erred by terminating her parental rights due to abandonment, we need not address her concerns related to additional grounds for termination. *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 717-18 (Colo. App. 2008) (when a party doesn't challenge all bases of a court's ruling on appeal, the appellate court must affirm); *see also* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

### III. Father's Contentions

¶ 5 Father contends that the juvenile court erred by finding that (1) there was no less drastic alternative to termination; (2) the Division made reasonable efforts to rehabilitate him; and (3) his

treatment plan was appropriate. Father also contends that the court erred by taking judicial notice of minute orders in his criminal cases. We address, and reject, these contentions in turn.

## A. Reasonable Efforts

¶ 6    Father first contends that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate him. Specifically, father contends that the Division failed to comply with the requirements of section 19-3-508(1)(e)(III), C.R.S. 2025, which requires the Division to report either (1) the services and treatment available to a parent incarcerated after dispositional orders are entered or (2) the caseworker's efforts to obtain this information. § 19-3-508(1)(e)(III).[1]

¶ 7    The Division contends that father did not preserve this issue for review. While we agree that father did not ask the court to make

---

[1] In making this argument, father's opening brief relies extensively on an unpublished decision by a division of this court, which violates our formal policy prohibiting parties from citing such cases (with exceptions that don't apply in this case). *See* Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2025), https://perma.cc/Z88K-5U7F. We trust that this violation of our policy won't be repeated.

findings specifically related to the reporting required by section 19-3-508(1)(e)(III), the court entered findings regarding the Division's reasonable efforts in light of father's in-custody status.  We will therefore address father's contention generally that the Division failed to make reasonable efforts after he was transferred to the Denver City Downtown Detention Center (Denver Downtown Detention).  *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal.").

### 1.    Relevant Law and Standard of Review

¶ 8    Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), a department of human services must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025.  "Reasonable efforts" means the "exercise of diligence and care" for a child who is in out-of-home placement, and the reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208.  § 19-1-103(114).

¶ 9     To evaluate whether a department made reasonable efforts, the court should consider whether the provided services were appropriate to support the parent's treatment plan.  *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  Whether a department made reasonable efforts should be "measured holistically" rather than individually focused on a single element or time period.  *People in Interest of E.D.*, 2025 COA 11, ¶ 11 (citation omitted).  A parent is ultimately responsible for using the services offered by a department, and the juvenile court "may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts."  *Id.* at ¶ 12.

¶ 10    It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 11    We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation.  *E.D.*, ¶ 13.

## 2.   Additional Background

¶ 12    Mother identified father at the child's birth, but the Division could not locate him for the first six months after the petition was filed.  The caseworker met with father for the first time while he was in custody in the Jefferson County Detention facility.  He was released shortly thereafter and was not in contact with the Division while he was in the community.  Three months later, father was incarcerated for the second time at Jefferson County Detention.  While there, father participated in paternity testing, which confirmed that he is the child's genetic father.  Shortly after, father signed the release of information necessary for the Division to refer him for jail-based substance dependence treatment.  Father completed a substance dependence evaluation, attended five substance dependence classes, and began virtual family time while in custody.

¶ 13    Two months after he began engaging, father was transferred to Denver Downtown Detention.  The substance dependence provider was not able to continue services there.  The termination hearing occurred approximately three months after father's transfer.

### 3. Analysis

¶ 14     The juvenile court found that the Division made reasonable efforts to attempt to provide services to father while he was in the community, while he was in Jefferson County Detention, and after he was transferred to Denver Downtown Detention.

¶ 15     In so doing, the court credited the caseworker's testimony and found that she made six to eight attempts to reach out to professionals at Denver Downtown Detention "to try to schedule a meeting with [father], understand what treatment might be available, provide them his treatment plan, and/or set up family time." The evidence was uncontested that the caseworker was not successful in these efforts. The court considered, and expressed concerns about, Denver Downtown Detention's failure to respond to

the caseworker.[2]  Nevertheless, "the court d[id] find that the caseworker made reasonable efforts to attempt to reach out and work with [father] in Denver."

¶ 16    First, father asserts that the caseworker was in contact with the wrong Denver facility.  But the record demonstrates otherwise. Throughout the hearing, the caseworker testified that father was transferred to "Denver County."  True, the Jefferson County Attorney referred to the facility as the "Denver County Jail." However, the caseworker clarified that there were two jail facilities in Denver: "Denver County Jail" and "Denver Downtown Detention" and that, as far as she was aware, father had only been in Denver Downtown Detention.  While the existence of two facilities does make general references in the record to "Denver County" somewhat

---

[2] We share these concerns.  Although the caseworker complied with the requirements of section 19-3-508(1)(e)(III), C.R.S. 2025, Denver Downtown Detention's failure to respond to her efforts to engage with father and provide the information required by the statute frustrates the intent of this recent legislation.  We acknowledge that the Department cannot force compliance by a different government agency, particularly one located in a different jurisdiction.  But there are at least some ways that a nonresponsive agency could be held to account — for example, by issuing a subpoena to appear at the hearing to the non-responsive official and requiring them to explain whether, and if so why, they have ignored their statutory obligation.

ambiguous, it is clear from the record that the caseworker and the juvenile court both understood that father was being held at Denver Downtown Detention.

¶ 17    Next, father contends that the caseworker could have performed inmate searches to determine father's inmate number, thereby allowing her to more effectively communicate directly with him. Father made a similar claim before the juvenile court, prompting the court to perform an inmate search on public platforms during the hearing. However, father does not explain, and we cannot discern, how determining father's inmate number would have remedied Denver Downtown Detention's failure to respond to the caseworker's attempts to communicate, which was the primary barrier to establishing services there.

¶ 18    Finally, father suggests that the reasonable efforts obligation required the caseworker to meet with him in person at Denver Downtown Detention. But we are not aware of, and father does not cite, any legal authority supporting his claim.

¶ 19    In any event, the Division met the reasonable efforts standard. It devised a treatment plan for father; made efforts to locate him for the first nine months of the case; provided multiple parentage

testing referrals; made referrals for jail-based services and family time; and facilitated placement services for the child. Once father was transferred to Denver Downtown Detention, the caseworker connected the established family time provider with the virtual visitation system used by that facility and, over the course of three months, made six to eight attempts to send father's treatment plan to the new facility, obtain the information necessary to visit or communicate with father, and gather information about services available to father there. Importantly, the caseworker testified that father made no attempts to engage in paternity testing or treatment, or to respond to the caseworker's outreach during the three months he spent out of custody between first speaking to the caseworker and being detained in Jefferson County.

B.   Additional Time to Complete the Treatment Plan

¶ 20   Father next contends that the juvenile court erred by finding that his conduct or condition was unlikely to improve within a reasonable time. Although father styles his argument for additional time as a less drastic alternative, he does not propose an alternative placement option that would resolve the dependency and neglect case. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (noting

10

that the less drastic alternative analysis involves the consideration of whether a placement alternative — such as an allocation of parental responsibilities — would satisfy the child's best interests).

¶ 21 The Division again urges us to decline to address father's issue as unpreserved, but we do not discern a meaningful distinction between the request father made before the juvenile court for more time and his contention before us now. *Brown*, ¶ 21. We therefore conclude the issue is preserved and focus our discussion on whether clear and convincing evidence supported the juvenile court's conclusion that father's condition was unlikely to improve within a reasonable time.

¶ 22 "In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *S.Z.S.,* ¶ 24. What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. A "reasonable time" is not an indefinite time. *Id.* In addition, when, as here, the child is

under six years old at the time of the filing of the petition, the action is subject to the expedited permanency planning provisions and the court must place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 23 The juvenile court found that father was "minimally engaged" in his treatment plan and continued to exhibit the same problems and concerns that required state intervention. The court acknowledged father's brief engagement in substance dependence treatment while he was incarcerated, but found that he had "not demonstrated sobriety or stability at any point throughout the case" and had failed to take any steps to comply with the domestic violence portion of his treatment plan.

¶ 24 The record supports these findings. When the caseworker located father in custody, he requested, and the caseworker made a referral for, paternity testing. However, father was released from custody before the testing could be completed. The caseworker made an appointment for father for testing in the community, but father did not attend. The caseworker testified that father did not make any efforts to participate in his treatment plan or meet with the child while he was in the community.

¶ 25    True, father engaged in some services during his second stay at Jefferson County Detention, but that recent progress did not require the court to give him additional time to become fit. *See S.Z.S.*, ¶¶ 24-25.

¶ 26    We therefore discern no error in the court's determination that father could not become fit within a reasonable period of time.

### C.    Father's Other Contentions

¶ 27    Father also contends that the juvenile court erred by finding that his treatment plan was appropriate and by taking judicial notice of nonadjudicative facts from his criminal cases.

¶ 28    Father concedes that these issues are unpreserved. However, nevertheless urges us to address his arguments under the miscarriage of justice exception to the preservation requirement. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.

¶ 29    If an error by the trial court involves a miscarriage of justice, we may consider an unpreserved issue for the first time on appeal. *In re R.G.B.*, 98 P.3d 958, 959 (Colo. App. 2004). The miscarriage of justice exception has a high bar and narrow scope. *People in Interest of M.B.*, 2020 COA 13, ¶¶ 23-24. We have recognized the exception in "rare cases, involving unusual or special

circumstances, . . . to prevent an unequivocal and manifest injustice." *People in Interest of E.R.S.*, 2019 COA 40, ¶ 38.

¶ 30    Father does not provide any explanation why the miscarriage of justice exception should apply to either his challenge to the treatment plan or to the scope of the juvenile court's judicial notice. We therefore will not consider these claims. *See Phillips v. People*, 2019 CO 72, ¶ 12 (a party may not merely "mention a possible argument in the most skeletal way, leaving the court to do counsel's work" (citation omitted)); *see also S.Z.S.*, ¶ 29 (we will not consider an argument when a parent "develops no legal or factual argument in support of th[e] assertion").[3]

---

[3] Although it does not change the outcome of father's appeal, we expressly disapprove of the scope of the juvenile court's judicial notice. As father points out, the court originally suggested that it would take judicial notice only of the *existence* of father's criminal cases and adjudicative facts associated with those cases. But the court nonetheless looked to the substance of non-adjudicative documents in those cases, including minute orders indicating that father had been a "neutral or poor performer" in recovery court and a presentence investigation report containing statements from father that appeared inconsistent with some of the positions that he had taken in this proceeding. While the existence of court actions is the kind of fact that is proper for judicial notice under CRE 201, taking judicial notice of "acts or conditions that were the subject of prior litigation, including court findings and conclusions" is not proper. *Doyle v. People*, 2015 CO 10, ¶ 11.

## IV.   Conclusion

The judgment is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.